JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
KELSEY A. MANWEILER, IDAHO STATE BAR NO. 10604
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHRISTOPHER HAYMAN,<br><br>　　　　Defendant. | Case No. 1:24-cr-00224-AKB<br><br>**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION** |

　　　　The United States, by and through undersigned counsel, respectfully submits this memorandum in support of its motion for pretrial detention pursuant to The Bail Reform Act, Title 18, United States Code, Section 3142. As explained herein, the Government seeks the continued pretrial detention of Defendant, Christopher Hayman. Hayman is a danger to the community because he unlawfully possesses an arsenal of firearms and has a propensity for violence against others. He is a risk of non-appearance because he has failed to appear in his pending cases, wherein the cost of extraditing him on two separate occasions has been incurred.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 1

## PROCEDURAL BACKGROUND

Christopher Hayman was charged via indictment with one count of unlawful possession of firearms, in violation of 18 U.S.C. § 922(g)(8); one count of false statement during purchase of firearms, in violation of 18 U.S.C. § 922(a)(6); and one count possession of unregistered firearms, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  (ECF No. 2.)  At the initial appearance, on October 17, 2024, the Government moved to detain Hayman and Hayman requested a hearing on the motion.  (ECF No. 7.)

## FACTUAL BACKGROUND

For approximately the last year and a half, Hayman has had a substantial increase in law enforcement contact.  This has culminated in at least two protection orders being issued, several pending charges, and a federal investigation into his procurement of firearms.  Outlined below is a timeline of Hayman's escalation of criminal conduct and what lead to the federal indictment in this case.

A. *Domestic violence incident in Pierce County, Washington*

On January 29, 2023, Hayman was arrested for felony unlawful imprisonment and misdemeanor domestic violence assault, interfering with reporting of domestic violence, and malicious mischief.  (Govt. Ex. 1.)  The incident occurred in Pierce County, Washington.  (*Id.*)  Law enforcement was familiar with the address because of two prior contacts.  The first having occurred when Hayman called to have officers remove a female from the home while he was out of town.  (*Id.*)  When the officer told him it appeared to be a civil matter, Hayman became irate with the officer and hung up the phone.  (*Id.*)  The second contact had occurred earlier that morning when an uber driver called to report that he had witnessed a male drag a female back into the house who had tried to leave.  (*Id.*)

Officers arrived on scene and saw Victim A sitting in a car with the tires deflated. (*Id.*) Victim A stated that when police arrived earlier, Hayman told her to tell the deputies everything was fine and threatened that he would hurt her dog if she reported anything. (*Id.*) He had also taken Victim A's keys to her car. Victim A complied with Hayman's threats and the deputies left. (*Id.*) After the officers left, the two continued to argue, where it escalated to the point that Victim A attempted to call 911. (*Id.*) When she did so, Hayman tried to take her phone away. (*Id.*) Hayman then grabbed Victim A by the neck and shoved her against the counter. (*Id.*) Victim A struggled to get free. (*Id.*) Eventually Hayman released and went outside where he slashed Victim A's tires. (*Id.*) During this incident, Hayman had also taken her car keys and dog's heart medication, further preventing Victim A from leaving. (*Id.*) Officers did observe redness and possible scratch marks on the side of Victim A's neck. (*Id.*) Victim A waited until Hayman went to sleep to call 911. (*Id.*) Victim A reported to officers that Hayman scares her when he drinks and that he had multiple firearms in the residence. (*Id.*)

When officers on scene attempted to arrest Hayman, he was non-compliant and shut the front door, ultimately locking it. (*Id.*) Hayman eventually complied and was taken into custody. (*Id.*) Victim A reported that about 9 months ago there was another domestic violence incident where officers attempted to arrest Hayman, but he fled and hid from them. (*Id.*)

B. *Domestic violence incident and protection order in Orange County, California*

On October 9, 2023, Victim B applied for a domestic violence restraining order in Orange County, California. (Govt. Ex. 2.) In the application, Victim B detailed Hayman forcibly raping her when she refused to have sex with him. (*Id.*) During the incident, Hayman grabbed Victim B's neck. (*Id.*) Every time Victim B resisted, Hayman would tighten his grip on her neck. (*Id.*) Victim B further detailed multiple incidences, some involving law enforcement,

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 3

where Hayman had threatened violence towards Victim B, called Victim B names, prevented Victim B from working or having access to her home, assaulted Victim B, and used the couple's dogs to exert power and control over Victim B. (*Id.*) Victim B discussed that during one of the fights she saw Hayman holding a firearm. (*Id.*) Victim B also reported that Hayman takes steroids and has more than ten firearms in the house. (*Id.*) Victim B further mentioned that Hayman is on probation for assaulting a former girlfriend. (*Id.*)

On November 1, 2023, the court entered a protection order against Hayman. (Govt. Ex. 3, *hereinafter California protection order*.) The order expires on November 1, 2026. (*Id.*) Hayman was present in court when the order was served. He was also present at his firearm compliance hearing on November 20, 2023. (*Id.*) The court minutes from the November 20, 2023, hearing show that Hayman was present, that a hearing was conducted relating to his compliance of relinquishing firearms as required by the protection order, and that no modifications were made to the protection order. (*Id.*) The protection order prohibits Hayman's conduct towards an "intimate partner." (*Id.*) The protection order prohibits Hayman from harassing, stalking, or threatening an intimate partner or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury. (*Id.*) The protection order explicitly prohibits Hayman from using, attempting to use, or threatening to use physical force against the protected individual. (*Id.*) The order also explicitly prohibits Hayman from possessing, buying, or receiving firearms, firearm parts, and ammunition. (*Id.*)

C. *Domestic violence incident in Los Angeles County, California*

On February 9, 2024, in Los Angeles County, California, Hayman assaulted Victim C. (Gov. Ex. 4 and 5.) Hayman grabbed Victim C by the neck and pushed her towards a glass sliding door where Victim C fell into dog feces and urine. (Govt. Ex. 5.) Victim C got up and

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 4

the fight continued. (*Id.*) Hayman eventually put Victim C in a chokehold, drug her into another room and slammed her body against a couch. (*Id.*) Victim C acknowledged that Hayman was likely still intoxicated from the night before. (*Id.*)

   D. *Assault with a deadly weapon in Los Angeles County, California*

On March 4, 2024, in Los Angeles County, California, Hayman used an assault rifle to assault Victim D. (Govt. Ex. 6, *hereinafter California Assault*.) Victim D stated that he was at the residence to serve an eviction notice on Hayman and Victim C. (*Id.*) While standing outside the front door, victim D heard a male voice say, "Do I do it?" "It is private property." (*Id.*) Hayman then opened the door holding a tan and black handgun with a flashlight and laser. (*Id.*) Hayman then suddenly pointed the gun directly at Victim D's head, shining the flashlight and laser in the victim's eyes. (*Id.*) Victim D went to his vehicle and called 911. (*Id.*) Victim C was present during the incident. (*Id.*)

Officers recovered a tan and black 9mm semi-automatic handgun with a flashlight and laser attached from the living room. (*Id.*) The handgun contained a magazine with 15 rounds of ammunition loaded and one round in the chamber. (*Id.*) Victim D positively identified the handgun as the one that was pointed at his head. (*Id.*) Hayman was arrested for assault with a deadly weapon and violation of the protection order issued on November 1, 2023. (*Id.*) During this incident, officers also recovered several more firearms, possessed by Hayman in violation of the California protection order. (Govt. Ex. 6, at 3.)

   E. *Ada County, Idaho protection order*

On May 3, 2024, in Ada County, Idaho, Victim C filed a petition for a domestic violence protection order naming Hayman as the restrained party. (*See* Ada County case, CV01-24-

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 5

07682.)  On May 15, 2024, the court issued a protection order restraining Hayman for one year.[1] (Govt. Ex. 7.)  This protection order prohibits Hayman from purchasing or possessing a firearm or ammunition.  (*Id.*)  Hayman was served with this protection order on May 15, 2024.  (Govt. Ex. 8.)

    F.  *Hayman's continued acquisition and possession of firearms*

On August 28, 2024, Hayman took possession of 34 firearms from Weaponsmart in Lewiston, Idaho.  Weaponsmart is a Federal Firearms Licensee (FFL).  The owner of Weaponsmart, stated that Hayman provided him with an Idaho Concealed Weapons Permit (CWP) and an Idaho driver's license for identification.  The Idaho FFL owner did not conduct a background check, because the CWP provides an exemption from the FFL running a background check.  The owner of the FFL thought the purchase was strange for several reasons: (1) the firearms had suddenly showed up at Weaponsmart from a Washington FFL sometime in January of 2024 without previous notification, (2) it took several months before Hayman reached out regarding picking them up, and (3) the cost of the firearms was over $15,000 dollars, a relatively high price for an individual that was not working for or associated with an FFL.  The owner of the FFL provided copies of the paperwork Hayman filled out, including Form 4473, prior to taking possession of the firearms.  Form 4473 identified 34 firearms purchased by Hayman.

One of the questions on Form 4473 that applicants are required to answer is Question 21.i., "Are you subject to a court order…restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?"  Hayman checked the box "No."

---

[1] Hayman was served with notice of the hearing where the protection order was issued. However, Hayman was not present in court during this hearing, because he was in the Canyon County jail pending extradition to California for charges stemming from the March 4, 2024, assault discussed in subsection D.  (*See* Ada County case, CR01-24-33018, Fugitive to Idaho.)

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 6

Hayman signed the certification that his answers were true and correct and complete and that he understood that making any false oral or written statement is a crime punishable as a felony under Federal law.

### G. Search of Hayman's residence and vehicle

On September 24, 2024, Bureau of Alcohol Tobacco Firearms and Explosives (ATF) agents executed a federal search warrant on Hayman's residence and vehicle in Boise, Idaho. In addition to finding the firearms purchased on August 28, 2024, agents also located in the residence 11 additional firearms to include a black personally manufactured firearm (PMF), a plethora of ammunition of varying calibers, a digital scale, 20 round drum magazine, MDMA, molly, marijuana and cocaine in recreational amounts. (Govt. Ex. 9.) In Hayman's vehicle was the receipt for the firearm transfer from August 28, 2024.

Special Agents with the ATF confirmed that all the firearms, except for the PMF had affected interstate commerce. ATF also confirmed that two of the firearms were short barrel rifles (SBR) requiring registration under the National Firearms Registration and Transfer Record (NFRTR). Neither firearm was registered with the NFRTR by Hayman.

During the search, ATF arrested Hayman on his outstanding FTA warrant for his California Assault. At the time of arrest Hayman had a cellphone in his hands. Post-*Miranda*, Hayman agreed to speak with the agent. Hayman also consented to the search of his cellphone. Hayman showed the agent emails on his phone between the Washington FFL, Hayman, and Weaponsmart for the transfer of the 34 firearms. Hayman also showed the agent a receipt from the Washington FFL confirming payment from Hayman for $15,160.67.

Hayman stated that the 34 firearms from Weaponsmart were in the closet in the upstairs bedroom. Hayman discussed that when he moved into the residence on June 1, 2024 (after the

California protection order was issued) he brought guns with him from his mom's house. Hayman thought that the judge in California had told him to bring his guns to Idaho and he did not know that his CWP was revoked.[2]

Hayman did not think the protection order in Ada County was in effect because his ex-girlfriend had shown him "an order canceling the protection order."[3] Hayman showed the agent a screen shot of the notice of hearing to terminate the protection order. Hayman said he did not go to the hearing and did not hear what the result was. Hayman said he knew the California protection order prohibited him from possessing firearms and acknowledged that law enforcement in California had seized firearms from him. Hayman said he did not know the protection order prohibited him from possessing firearms in other states. Hayman acknowledged completing the form and not marking that he had a protection order against him because he thought the California order did not apply outside of the State of California. Hayman told the agent he did marijuana, but the rest of the drugs were left by friends during a party. Hayman stated this, despite showing the agent a text message between him and a friend that discusses Hayman acquiring 6 grams of "Molly."[4] (Govt. Ex. 10.)

During a recent jail call with his current girlfriend, Hayman asked his girlfriend to get his passport from the mailbox. He reminded her that he was supposed to go to Mexico and that was why he renewed his passport.

---

[2] When the Ada County protection order was issued, Ada County Sheriffs sent a letter to Hayman notifying him that his CWP was revoked. However, the letter was sent to an old address so Hayman never received notice.

[3] Contact with this ex-girlfriend (protected party) would be a violation of the Ada County protection order.

[4] Molly is a slang term used for MDMA.

**LEGAL AUTHORITY**

The Bail Reform Act provides that a judicial officer shall detain a defendant pending trial where "no conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Detention is appropriate where a defendant poses either a danger to the community or a risk of non-appearance and it is not necessary to prove both. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The Government must establish by clear and convincing evidence that the Defendant presents a danger to the community and by a preponderance of the evidence that the Defendant is a risk of non-appearance. *Id.*

In determining whether pretrial detention is appropriate, Section 3142 provides four factors for the Court to consider: (1) the nature and circumstances of the offense charged, including whether the offense charged is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990); 18 U.S.C. § 3142(g).

Based on the nature of the charged offenses, 18 U.S.C. § 3142(e)(3)(A) establishes a presumption (albeit rebuttable) that "no condition or combination of conditions" will reasonably assure (1) the appearance of defendant as required, or (2) the safety of the community. While the burden of persuasion remains with the Government when arguing detention, a burden of production is indeed shifted to the defendant to provide facts overcoming the statutory presumption that he should be detained as both a flight risk and danger to the community. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 9

At the detention hearing, the Court may properly rely upon a proffer by counsel in determining a defendant's danger to the community or risk of flight. *See United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("'[T]he government may proceed in a detention hearing by proffer or hearsay."); *see also United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 575-76 (S.D. Cal. 2000) ("The use of proffers and hearsay evidence are a necessary ingredient to the effective working of the Bail Reform Act, and prevention of a mini trial, or an early discovery expedition further facilitates those goals. Discovery is provided at the appropriate time and in the manner provided for in the Federal Rules and relevant statutes.").

## ARGUMENT

### A.  Nature and Circumstances of the Offense

The nature and circumstance of the offense indicate that Hayman lies, does not abide by court orders, does not show up to court hearings, and abuses substances.

### B.  Weight of the Evidence

The evidence establishing Hayman's guilt is strong. By his own admission he knew he was subject to a protection order, he disregarded that protection order and chose to purchase several firearms. Based on the facts in the California Assault, he was possessing firearms in California after the California protection order was entered. His defense that he was unaware of the protection order's applicability outside of the State of California is not a legal defense. The defense is further contradicted by the face of the protection order explicitly warning him that it was a violation of federal law to possess firearms and ammunition while the protection order was in effect. Finally, a mistake in the law is not a legal defense for the crimes alleged in the indictment. By the plain language of the protection orders, Hayman had notice that possessing or purchasing firearms or ammunition was in violation of federal law.

GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION – 10

### C. The Defendant's History and Characteristics Demonstrate the Danger and Risk of Non-Appearance He Poses

Hayman appears to be escalating in violence. While he does not have any criminal convictions for the assaults he has been charged with, he has failed to appear for court hearings. Hayman has been extradited twice to California to face charges stemming from the California Assault. He also failed to appear in July of this year on his misdemeanor charge for open container. It appears from the evidence that he was living in Idaho at the time of this court appearance. Despite this, he failed to appear. This shows the court that he is a risk of non-appearance.

His behavior outlined above also shows this court his unwillingness to abide by court orders or direction of law enforcement. As outlined above, Hayman is not always compliant with lawful commands. Additionally, despite knowledge of the protection orders, he continued to possess and purchase firearms. He also admitted to having contact with one of the protected parties, a violation of that protection order. This shows the court that he will not abide by its conditions of release.

Furthermore, Hayman did not divulge any issues with substance abuse during his pretrial services interview. As discussed above, the evidence suggests the contrary. Three of the four victims discuss his intoxication or use of drugs. Agents found drugs at his residence during the search, to which he admitted to using in part. Evidence on his phone suggests he partakes in drug use. Hayman also has prior misdemeanors involving alcohol related offenses to include at least one driving under the influence charge. The evidence suggests that substance abuse plays a roll in Hayman's criminal conduct. Untreated substance abuse issues can lead to a risk of non-appearance and further risk to the safety of the community.

His failure to comply with court orders, his continued law violations in multiple jurisdictions, and his prior failures to appear, makes him a risk of non-appearance and supports detention in this case. He has also discussed needing his passport for a Mexico trip. Hayman has demonstrated to this court that there are no conditions this court can put into place that will prevent him from leaving the jurisdiction. Especially when this court considers that he will have to leave this jurisdiction to attend court hearings in his pending out of state matters. There are also no conditions that will ensure that even if in Idaho, he shows up to his court hearings.

Despite repeated admonishment regarding restrictions for firearm possession, he continues to acquire firearms. His blatant disregard for court orders and lawful commands is strong evidence that there are no conditions of release that can mitigate the danger he is to the community.

### D. The Defendant Poses a Significant Danger to the Community

The nature and circumstances of the offense reveal that Hayman presents a danger to the community. Despite multiple court orders prohibiting Hayman from possessing firearms, Hayman continues to obtain firearms. Perhaps more alarming than his willful disregard for court orders, is Hayman's violent tendencies. Hayman is alleged to have violently assaulted four separate victims in three different states. One of those assaults involving a firearm. As discussed above, there are concerning consistencies to Hayman's violent episodes. These consistencies include choking, threats, coercion, manipulation, intoxication, and the presence of firearms.

He has shown time and again, despite repeated judicial orders, that he will disregard the law and the conditions placed on him. The judicial system has repeatedly allowed Hayman to be released pending trial. Instead of taking advantage of these opportunities, he has repeatedly had

law enforcement contact related to violent crimes.  This creates a danger to the larger community should he be released.

### E. Only Pretrial Detention Will Reasonably Assure the Safety of Others and the Community and the Defendant's Future Appearance

Hayman's actions while under court orders, and his conduct in the instant case make him unsuitable for pretrial release.  No combination of conditions of release will eliminate the risk of danger he presents to the community, nor will they assure his appearance.  Even location monitoring will not ensure Hayman does not obtain firearms or commit violence inside his home.  All location monitoring will do is tell law enforcement where he is at the time any suspected assaults are committed; it will not prevent the assaults from occurring.  As such, the Government respectfully requests that Hayman be detained pending trial.

Respectfully submitted this 22nd day of October, 2024.

> JOSHUA D. HURWIT
> UNITED STATES ATTORNEY
> By:
>
> */s/ Kelsey Manweiler*
> KELSEY A. MANWEILER
> Special Assistant United States Attorney