BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
KELSEY A. MANWEILER, IDAHO STATE BAR NO. 10604
SPECIAL ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>    vs.<br><br>CHRISTOPHER MICHAEL HAYMAN,<br><br>        Defendant. | Case No. 1:24-cr-00224-AKB<br><br>**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM** |

The Defendant comes before the Court having pleaded guilty to the charges of possession of unregistered firearms. The Government recommends that the Court sentence the Defendant to a term of imprisonment of 46 months in prison, to be followed by 3 years of supervised release.

## FACTUAL AND PROCEDURAL BACKGROUND

For the last few years, Defendant has had a substantial increase in law enforcement contact. This has culminated in at least two protection orders being issued, several pending charges, and a federal investigation into his procurement of firearms. Outlined below is a

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 1**

timeline of Defendant's escalation of criminal conduct and what lead to the federal indictment in this case.

### A. Domestic violence incident in Pierce County, Washington[1]

On January 29, 2023, Defendant was arrested for felony unlawful imprisonment and misdemeanor domestic violence assault, interfering with reporting of domestic violence, and malicious mischief. (Govt. Ex. 1.) The incident occurred in Pierce County, Washington. (*Id.*) Law enforcement was familiar with the address because of two prior contacts. The first having occurred when Defendant called to have officers remove a female from the home while he was out of town. (*Id.*) When the officer told him it appeared to be a civil matter, Defendant became irate with the officer and hung up the phone. (*Id.*) The second contact had occurred earlier that morning when an uber driver called to report that he had witnessed a male drag a female back into the house who had tried to leave. (*Id.*)

Officers arrived on scene and saw Victim A sitting in a car with the tires deflated. (*Id.*) Victim A stated that when police arrived earlier, Defendant told her to tell the deputies everything was fine and threatened that he would hurt her dog if she reported anything. (*Id.*) He had also taken Victim A's keys to her car. Victim A complied with Defendant's threats and the deputies left. (*Id.*) After the officers left, the two continued to argue, where it escalated to the point that Victim A attempted to call 911. (*Id.*) When she did so, Defendant tried to take her phone away. (*Id.*) Defendant then grabbed Victim A by the neck and shoved her against the counter. (*Id.*) Victim A struggled to get free. (*Id.*) Eventually Defendant released and went outside where he slashed Victim A's tires. (*Id.*) During this incident, Defendant had also taken her car keys and dog's heart medication, further preventing Victim A from leaving. (*Id.*)

---

[1] This is the incident outlined in paragraph 36 of the Final Presentence Report.

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 2**

Officers did observe redness and possible scratch marks on the side of Victim A's neck. (*Id.*) Victim A waited until Defendant went to sleep to call 911. (*Id.*) Victim A reported to officers that Defendant scares her when he drinks and that he had multiple firearms in the residence. (*Id.*) When officers on scene attempted to arrest Defendant, he was non-compliant and shut the front door, ultimately locking it. (*Id.*) Defendant eventually complied and was taken into custody. (*Id.*) Victim A reported that about 9 months ago there was another domestic violence incident where officers attempted to arrest Defendant, but he fled and hid from them.[2] (*Id.*) On May 9, 2023, Defendant was placed on 2 years probation. A probation violation has been filed and there is an active warrant for Defendant's arrest.

B. *Domestic violence incident and protection order in Orange County, California*

On October 9, 2023, Victim B applied for a domestic violence restraining order in Orange County, California. (Govt. Ex. 2.) In the application, Victim B detailed Defendant's forcibly raping her when she refused to have sex with him. (*Id.*) During the incident, Defendant grabbed Victim B's neck. (*Id.*) Every time Victim B resisted, Defendant would tighten his grip on her neck. (*Id.*) Victim B further detailed multiple incidences, some involving law enforcement, where Defendant had threatened violence towards Victim B, called Victim B names, prevented Victim B from working or having access to her home, assaulted Victim B, and used the couple's dogs to exert power and control over Victim B. (*Id.*) Victim B discussed that during one of the fights she saw Defendant holding a firearm. (*Id.*) Victim B also reported that Defendant takes steroids and has more than ten firearms in the house. (*Id.*)

---

[2] "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Wilkinson*, No. 1:14-CR-168-BLW-1, 2015 WL 6182466, at *12 (D. Idaho Oct. 21, 2015) (citing *U.S. v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986)).

On November 1, 2023, the court entered a protection order against Defendant.  (Govt. Ex. 3, *hereinafter California protection order*.)  The protection order explicitly prohibits Defendant from possessing, buying, or receiving firearms, firearm parts, and ammunition.  (*Id.*)  It also explicitly warned him that it was a violation of federal law to possess firearms and ammunition while the protection order was in effect.  (*Id.*)

C.  *Domestic violence incident in Los Angeles County, California*

On February 9, 2024, in Los Angeles County, California, Defendant assaulted Victim C. (Gov. Ex. 4 and 5.)  Defendant grabbed Victim C by the neck and pushed her towards a glass sliding door where Victim C fell into dog feces and urine.  (Govt. Ex. 5.)  Victim C got up and the fight continued.  (*Id.*)  Defendant eventually put Victim C in a chokehold, drug her into another room and slammed her body against a couch.  (*Id.*)  Victim C acknowledged that Defendant was likely still intoxicated from the night before.  (*Id.*)

D.  *Assault with a deadly weapon in Los Angeles County, California*

On March 4, 2024, in Los Angeles County, California, Defendant used an assault rifle to assault Victim D.  (Govt. Ex. 6, *hereinafter California Assault*.)  Victim D stated that he was at the residence to serve an eviction notice on Defendant and Victim C.  (*Id.*)  While standing outside the front door, victim D heard a male voice say, "Do I do it?" "It is private property." (*Id.*)  Defendant then opened the door holding a tan and black handgun with a flashlight and laser.  (*Id.*)  Defendant then suddenly pointed the gun directly at Victim D's head, shining the flashlight and laser in the victim's eyes.  (*Id.*)  Victim D went to his vehicle and called 911.  (*Id.*) Victim C was present during the incident.  (*Id.*)

Officers recovered a tan and black 9mm semi-automatic handgun with a flashlight and laser attached from the living room.  (*Id.*)  The handgun contained a magazine with 15 rounds of

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 4**

ammunition loaded and one round in the chamber.  (*Id.*)  Victim D positively identified the handgun as the one that was pointed at his head.  (*Id.*)  Defendant was arrested for assault with a deadly weapon and violation of the protection order issued on November 1, 2023.  (*Id.*)  During this incident, officers also recovered several more firearms, possessed by Defendant in violation of the California protection order.  (Govt. Ex. 6, at 3.)

### E. Ada County, Idaho protection order

On May 3, 2024, in Ada County, Idaho, Victim C filed a petition for a domestic violence protection order naming Defendant as the restrained party.  (*See* Ada County case, CV01-24-07682.)  On May 15, 2024, the court issued a protection order restraining Defendant for one year.  (Govt. Ex. 7.)  This protection order prohibited Defendant from purchasing or possessing a firearm or ammunition.  (*Id.*)  Defendant was served with this protection order on May 15, 2024.  (Govt. Ex. 8.)

### F. Defendant's continued acquisition and possession of firearms

On August 28, 2024, Defendant took possession of 34 firearms from a Federal Firearms Licensee (FFL).  The owner of the FFL stated that Defendant provided him with an Idaho Concealed Weapons Permit (CWP) and an Idaho driver's license for identification.  The Idaho FFL owner did not conduct a background check, because the CWP provides an exemption from the FFL running a background check.  The owner of the FFL thought the purchase was strange for several reasons: (1) the firearms had suddenly showed up at the Idaho FFL from a Washington FFL sometime in January of 2024 without previous notification, (2) it took several months before Defendant reached out regarding picking them up, and (3) the cost of the firearms was over $15,000 dollars, a relatively high price for an individual that was not working for or associated with an FFL.  The owner of the FFL provided copies of the paperwork Defendant

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 5**

filled out, including Form 4473, prior to taking possession of the firearms.  Form 4473 identified 34 firearms purchased by Defendant.

One of the questions on Form 4473 that applicants are required to answer is Question 21.i., "Are you subject to a court order…restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner?"  Defendant checked the box "No." Defendant signed the certification that his answers were true and correct and complete and that he understood that making any false oral or written statement is a crime punishable as a felony under Federal law.

G. *Search of Defendant's residence and vehicle*

On September 24, 2024, Bureau of Alcohol Tobacco Firearms and Explosives (ATF) agents executed a federal search warrant on Defendant's residence and vehicle in Boise, Idaho. In addition to finding the firearms purchased on August 28, 2024, agents also located in the residence 11 additional firearms to include a black privately made firearm (PMF), a plethora of ammunition of varying calibers, a digital scale, 20 round drum magazine, MDMA, molly, marijuana and cocaine in recreational amounts.  (Govt. Ex. 9.)  Below are images of some of the many firearms and firearm accessories found during execution of the search warrant.

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 6**



**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 7**





**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 9**



**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 10**



**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 11**



Special Agents with ATF confirmed that two of the firearms (Aero Precision LLC rifle and the PMF) were short barrel rifles (SBR) requiring registration under the National Firearms Registration and Transfer Record (NFRTR). Neither firearm was registered with the NFRTR by Defendant.

Post-*Miranda*, Defendant admitted that he knew the California protection order prohibited him from possessing firearms and acknowledged that law enforcement in California had seized

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 12**

firearms from him.  (Govt. Ex. 10.)  Defendant acknowledged completing the form and not marking that he had a protection order against him.  Defendant also admitted to drug use.  (*Id.*)

On October 8, 2024, a Boise grand jury returned a criminal indictment charging Defendant with one count of unlawful possession of firearms, in violation of 18 U.S.C. § 922(g)(8); one count of false statement during purchase of firearms, in violation of 18 U.S.C. § 922(a)(6); and one count possession of unregistered firearms, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  (Dkt. 2.)  On July 10, 2025, Defendant pleaded guilty to possession of unregistered firearms.  (Dkt. 28 and 31.)

## APPLICABLE SENTENCING GUIDELINES RANGE

Defendant's base offense level is 20 under U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2K2.1(a)(4)(B) (2024).  (Final PSR ¶ 19.)  After application of a six-level enhancement under § 2K2.1(b)(1)(C) for possessing 45 firearms, a three-level enhancement under § 2K2.1(b)(4)(B) for possessing an un-serialized firearm, and a three-level decrease for acceptance of responsibility under § 3E1.1, the total offense level is 26.  (Final PSR ¶¶ 20-29.)  Defendant has a criminal history of I.  (PSR ¶ 39.)  An offense level of 26 with a criminal history category of I, results in a guidelines range of 63-78 months.

A.      *Operability of the firearm in the offense of conviction, Paragraphs 11 and 12.*

Based on the crime of conviction, the definition for a short-barrel-rifle is found in 26 U.S.C. § 5845 and is defined as a rifle having a barrel of less than 16 inches in length or has an overall length of less than 26 inches.  A rifle is defined as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge."  26 U.S.C. § 5845(c).

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 13**

Defendant claims that the two firearms central to his conviction were not readily operable. Specifically, the Aero Precision LLC rifle had a bullet lodged in the barrel and the PMF rifle was missing two pins. (Dkt. 42, at 2, Response to Presentence Report.) This argument fails both legally and factually because each firearm can be readily restored to operability.

The Ninth Circuit has defined "readily restorable" as follows:

> We conclude that, for purposes of § 5845(b), the plain and unambiguous ordinary meaning of "readily" may be defined by a temporal component ("with fairly quick efficiency: without needless loss of time: reasonably fast") or a component related to a manner or methodology ("with a fair degree of ease: without much difficulty: with facility"). Restored [meaning], to bring back to or put back into a former or original state.

*United States v. TRW Rifle 7.62X51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686, 690-91 (9th Cir. 2006).

In *TRW rifle*, the Ninth Circuit made clear that "[t]he unambiguous scope of the statute is not limited to instantaneous or on-the-spot restorations nor does it require restoration to original specifications. *Id*., at 693 (explaining restoration can include "an 8–hour working day in a properly equipped machine shop.") (internal citations omitted). Here, the two firearms are "readily restorable," because a jammed bullet can be unjammed. Similarly, a pin is easily placed in the firearm making it operable. Thus, the temporal operability of the firearm is not a defense to the crime Defendant pleaded guilty to. As such, the information provided by Defendant in paragraph 12, the Court should not consider mitigating. *See, e.g.*, *United States v. Montoya-Gaxiola*, 796 F.3d 1118, 1124 (9th Cir. 2015) (discussing elements the Government must prove).

More importantly, Defendant waived any alleged defense he had to the crime by pleading guilty. (*See* Dkt. 28, at 2 (waiver to present evidence at trial), at 3 (admitting that the

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 14**

characteristics of the firearms brough them within the scope of the NFRTA), at 8-9 (waiving his right to collaterally attack admitted conduct as not falling within the statute of conviction).) Thus, the arguments made by Defendant relating to the operability of the firearm are contrary to his obligations under the plea agreement.

    B.       *The PSR Correctly Determined that the enhancement under U.S.S.G. §*
              *2K2.1(b)(4)(B(ii).*

A Defendant's offense level is enhanced under U.S.S.G. § 2K2.1(b)(4)(B(ii), if "the defendant knew that any firearm involved in the offense was not otherwise marked with a serial number …or was willfully blind to or consciously avoided knowledge of such fact." The defendant must have known or consciously avoided knowledge of or been willfully blind to the fact that the firearm did not have a serial number. App. Note. 8(B). Courts make factual findings by a preponderance of the evidence, *United States v. Lucas*, 101 F.4th 1158, 1163 (9th Cir. 2024), and may rely on the entire record. *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013). A district court is not bound to accept a defendant's self-serving version of events "made with the purpose of reducing his sentence." *United States v. Gavilan*, 966 F.2d 530, 532 (9th Cir. 1992) (internal citation omitted); *see also United States v. Lui*, 941 F.2d 844, 849 (9th Cir.1991) (upholding the district court's finding that the defendant was not a mere courier where the only other evidence was the defendant's self-serving statement to the contrary).

The offense of conviction involves a privately made firearm (PMF), also described as a personally manufactured firearm, which does not have a serial number.[3] Here Defendant knew, or was willfully blind, or consciously avoided that the PMF lacked a serial number for several

---

[3] ATF defines "privately made firearms (PMFs)" as "firearms (including a frame or receiver) that have been completed, assembled or otherwise produced by a person other than a licensed manufacturer. PMFs are also made without a serial number placed by a licensed manufacturer at the time the firearm was produced." Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Privately Made Firearms*, (Nov. 14, 2025), https://www.atf.gov/firearms/privately-made-firearms.

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 15**

reasons. First, Defendant was intimately familiar with the firearm as he admitted as much during his post-*Miranda* interview with ATF. (Govt. Ex. 10.) Additionally, in the Defendant's own filing in this case, the Defendant described the PMF as "missing a rear upper and lower marrying cotter pin, as well as the buffer tube retaining pin." (Dkt. 42, at 2, Response to Presentence Report.) This further shows his intimate familiarity with the PMF. Second, as Defendant has presented throughout several filings, he is a combat veteran and a firearm enthusiast. Thus, he has a familiarity with firearms beyond the average consumer. Third, he admitted to building guns in the past. (Govt. Ex. 10.) Again, showing that the Defendant is clearly familiar with the intricate parts of the PMF and has a specialized knowledge pertaining to building firearms. Because of this familiarity and knowledge, he would have known, been willfully blind to the fact, or consciously disregarded that the PMF was lacking a serial number.

C.      *The Court can and should consider the underlying facts in pending cases similar, especially in assessing dangerousness.*

In determining the appropriate sentence to impose, the Court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. *See* 18 U.S.C. § 3661. The guidelines echo this directive by instructing the Court to consider relevant conduct. U.S.S.G. § 1B1.1, App. Note 1(I) ("offense" means the offense of conviction and all relevant conduct under § 1B1.3). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id*. § 1B1.3(a)(1). "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." *United States v. Watts*, 519 U.S. 148, 153, 117 S. Ct.

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 16**

633, 635–36, 136 L. Ed. 2d 554 (1997) (citing USSG § 1B1.3, background).  Thus, the Court can consider conduct that is not a conviction.

Here, Defendant asks the Court to disregard his pending matters involving allegations of violence and firearm use.  To do so is contrary to assessing relevant conduct and the directive in 18 U.S.C. § 3661.  Especially considering that several of the cases have not been adjudicated due to Defendant's failure to appear for hearings in those matters.  He was also under pretrial supervision in several of the pending matters when he committed the instant offense.  The allegations have alarming consistencies, told by victims who have never met, giving indication to the reliability.  The relevant conduct includes dismissed counts involving the unlawful possession of firearms by Defendant, who is prohibited from possession by a domestic violence protection order.

## SENTENCING ANALYSIS UNDER 18 U.S.C. § 3553

For the last few years Defendant has been escalating in violence.  As outlined above, this investigation began because ATF learned that Defendant was purchasing a high volume of firearms while subject to several active protection orders.  Despite knowing that he was prohibited from possessing firearms, he had an arsenal to include a short barrel rifle and an untraceable privately made firearm.

While the Defendant's criminal history is not extensive, his limited criminal history is due in part to his own actions of failing to appear.  These failures to appear show his unwillingness to face responsibility for his actions.  Defendant is also often not compliant with officers' lawful commands and court orders.  For example, despite knowledge of the many protection orders, he continued to possess and purchase firearms.

UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 17

Central to Defendant's criminal behavior, is his inability to be honest with himself and take accountability for his actions. The impacts and extent of his substance abuse is one such example of his lack of honesty. Three of the four victims discuss his intoxication or use of drugs. Agents also found drugs at his residence during the search, to which he admitted to using in part.

Defendant has an extensive number of resources available to him to help him address the many issues outlined in the presentence report as well as Defendant's psychological evaluation. Despite having access to these resources, Defendant does not appear to realize the opportunities treatment could have afforded him in allowing him to remain in the community and avoid future interactions with the law. Thus, a period of incarceration to punish his criminal conduct and deter future criminal conduct is appropriate.

Relevant conduct shows the danger Defendant is to the community. Despite multiple court orders prohibiting Defendant from possessing firearms, he continued to obtain these lethal weapons. Perhaps more alarming than his willful disregard for court orders, is Defendant's violent tendencies. Defendant is alleged to have violently assaulted four separate victims in three different states. One of those assaults involved a firearm. And there are concerning consistencies to Defendant's violent episodes. These consistencies include choking, threats, coercion, manipulation, intoxication, and the presence of firearms. The unlawful possession of firearms by domestic abusers is a significant threat to the victims and the community.

This is why society has identified a class of individuals that through their own actions are too dangerous to possess firearms. Individuals, like Defendant, who have a history of violence, an obsession with lethal weapons, and abuse substances. Alarmingly, the evidence shows that Defendant knows how to purchase firearms through means that do not involve background

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 18**

checks.  A 46-month sentence imposes a sentence that reflects the seriousness of the offenses and protects the public from the Defendant during his period of incarceration.

Undoubtedly, Defendant has been impacted by his honorable service in the military and his childhood.  The Court can use these significant impacts as a justification to vary downward in the guidelines to a sentence of 46 months.  But the Court should not vary further than 46 months.  This is because 46 months adequately considers the Defendant's age, skill set, upbringing, and criminal history.  A 46-month sentence strikes the appropriate balance between someone who has experienced violent trauma, but who his violent himself.

<strong><u>CONCLUSION</u></strong>

Application of 18 U.S.C. § 3553 supports a sentence of 46 months for the Defendant's commission of the crime of possession of unregistered firearms.  The Government submits that a sentence of 46 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing, and that a lesser sentence is not supported by application of the 18 U.S.C. § 3553(a) factors.

Respectfully submitted this 14th day of November, 2025.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

*/s/ Kelsey A. Manweiler*
KELSEY A. MANWEILER
Special Assistant United States Attorney

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM - 19**